UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FERRARI FINANCIAL SERVICES, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:24-CV-2508-B |
| MARC L. INGRAM, and G7 MOTORSPORTS LLC, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Ferrari Financial Services, Inc. ("FFS")'s Motion for Default Judgment (Doc. 16). For the reasons provided below, the Motion is **GRANTED**. A final judgment will follow.

### I.

### BACKGROUND

This case is about a Ferrari. Specifically, a 2022 Ferrari 296 GTB (the "Vehicle"), which Defendants Marc L. Ingram and G7 Motorsports, LLC (collectively "Defendants") purchased from a Florida car dealership in 2023. Doc. 1, Compl. ¶ 7. To help with financing, Defendants entered into a retail installment sale contract (the "Contract"). *Id.*; *see generally* Doc. 1, Compl. Ex. A. (hereinafter cited as "Contract"). Thereunder, Defendants agreed to tender 59 monthly installment payments of $6,422.65, as well as a one-time balloon payment of $229,825.20, constituting a 60-month payment plan. *See* Contract, 1. Immediately upon execution, the dealership assigned their interest in the Contract over to FFS. Doc. 1, Compl. ¶ 8.

Under the Contract, FFS retained a security interest in the Vehicle. *Id.* ¶ 11. If Defendants defaulted on their payment obligations, FFS could both demand full payment of the outstanding balance and repossess the Vehicle. *See id.* ¶ 12; Contract, 4. In the event of default, Defendants would be responsible for costs associated with repossession, storage, and resale of the Vehicle, including any necessary attorney's fees and court costs. Doc. 1, Compl. ¶¶ 12-13.

Defendants defaulted on the Contract in early summer 2024. *See id.* ¶ 14. In September 2024, FFS sent Defendants a demand letter seeking full repayment of the principal in addition to late charges. *Id.* ¶ 15. Defendants did not respond to the letter, and in October 2024 FFS filed this action, alleging breach of contract and seeking a writ of sequestration to repossess the Vehicle. *See id.* ¶¶ 21-33.

Shortly thereafter, Defendants surrendered the Vehicle to FFS. Doc. 16-3, Decl. Granger ¶ 5. At that time, the unpaid principal balance was $409,860.66. *Id.* ¶ 6. FFS sold the Vehicle at auction and netted $279,675 in total proceeds. *Id.* ¶¶ 7-8. This amount, applied to Defendants' balance, reduced the outstanding principal to $130,185.66. *Id.* ¶ 9. According to FFS, Defendants also owe an additional $1,357.40 in late charges. *Id.* ¶ 10.

In October 2024, FFS served G7 Motorsports, LLC through its registered agent. Doc. 5, Proof Service, 1. In November 2024, FFS served Ingram through counsel. *See* Doc. 6-1, Acceptance Service, 1. Both Defendants failed to answer or otherwise respond to the Complaint by their respective deadlines. In December 2024, the Clerk of Court entered Default against Defendants. *See generally* Doc. 8, Entry Default. Then in September 2025, FFS moved for default judgment on its breach of contract claim. *See generally* Doc. 16, Mot. Specifically, FFS requests that the Court enter

default judgment and award it contractual damages totaling $131,543.06, along with post-judgment interest. *Id.* at 1-2.

The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, upon motion of the plaintiff, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend. FED. R. CIV. P. 55(a), (b)(2). That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes and citations omitted). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, "default judgment is committed to the discretion of the district court." *Chevron Intell. Prop., L.L.C. v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *2 (N.D. Tex. Aug. 24, 2009) (O'Connor, J.) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (Boyle, J.) (citation omitted). First, courts consider whether the entry of a default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an

absolute confession by the defendant of his liability and of the plaintiff's right to recover"). "Third, courts determine what form of relief, if any, the plaintiff should receive." *Morelia Mexican*, 126 F. Supp. 3d at 813 (citation omitted).

## III.

## ANALYSIS

The Court concludes that a default judgment is both procedurally warranted and supported by a sufficient factual basis. Accordingly, FFS is entitled to a default judgment against Defendants in the sum-certain amount of $130,185.66, along with post-judgment interest as detailed below.

A.  *An Entry of Default Judgment is Procedurally Warranted.*

To determine whether default judgment is procedurally warranted, the Court considers a list of factors set forth by the Fifth Circuit, known as the *Lindsey* factors:

> [1] whether material issues of fact are at issue; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893 (citation omitted).

After applying the six *Lindsey* factors to FFS's Motion, the Court determines that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings, so there are no material facts in dispute. *See id.*; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [FFS's] interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893) (other citation omitted).

Third, given that Defendants have had sixteen months to respond to the Complaint and nearly five months to respond to the present Motion or explain why they have not done so, the grounds for default are clearly established. *Cf. Ann Best Elite Temporaries, Inc. v. KNR Grp., Inc.*, 216 F.3d 1080 (5th Cir. 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining that his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, FFS seeks only the relief the law provides, and "the Court is aware of no applicable defense." *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (Lynn, J.) (citation omitted). Sixth, and finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. *See Lindsey*, 161 F.3d at 893 (quoting FED R. CIV. P. 55(c)). Therefore, the Court concludes that default judgment is procedurally proper.

B.    *There is a Sufficient Basis for Judgment in the Pleadings.*

Next, the Court must review the pleadings to determine whether FFS can establish a viable claim for relief. *See Nishimatsu Constr.*, 515 F.2d at 1206. Due to their default, Defendants admit all well-pleaded facts in the Complaint. *See id.* But a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

In conducting this portion of the analysis, "the Fifth Circuit looks to the [Federal Rule of Civil Procedure 8] case law for guidance." *Morales v. Rausch Grp. & Assocs., LLC*, No. 3:19-CV-2850-B, 2020 WL 6583023, at *3 (N.D. Tex. Nov. 10, 2020) (Boyle, J.) (citation omitted). "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is

entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). "The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (citation omitted). But "the pleading must present 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To prevail on a breach of contract claim under Florida law,[1] FFS must show "(1) a valid contract existed; (2) a material breach of the contract; and (3) damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. Dist. Ct. App. 2017) (citation omitted). Taking FFS's well-pleaded allegations as true, FFS has pleaded a sufficient basis for judgment on its breach of contract claim.

First, FFS pleaded the existence of a valid installment contract, under which Defendants became obligated to make specific payments to satisfy a debt. *See* Doc. 1, Compl. ¶¶ 7-12. In the event of Defendants' default, FFS could demand full payment under the agreement. Contract, 4. FFS could also repossess and sell the Vehicle, and if the proceeds from the sale were insufficient to cover the balance of the debt, Defendants would be obligated to pay the remaining balance. *Id.* At the time of execution, the dealership assigned its interest in the Contract over to FFS. *See id.* at 6. This establishes the existence of a valid contract between the parties. Second, FFS pleaded that Defendants defaulted on the Contract in summer 2024. *See* Doc. 1, Compl. ¶ 14. Then, when FFS sent a demand letter, Defendants failed to tender full payment under the Contract. *Id.* ¶¶ 15-16. This establishes a material breach. Third, FFS pleaded that Defendants failed to pay the remaining

---

[1] The Contract states that "Federal law and the law of the state of Florida apply to this contract." Contract, 2. Accordingly, the Court applies Florida law. *See Overstreet v. Contigroup Cos.*, 462 F.3d 409, 411-12 (5th Cir. 2006) (holding that when a contractual choice-of-law provision has not been called into question by the parties, a court will honor the validity of that provision).

balance owed under the Contract, now $130,185.66. *Id.* ¶ 16; Doc. 16-3, Decl. Granger ¶ 9. This establishes FFS's damages from Defendants' breach.

Accordingly, there is a sufficient basis for judgment on FFS's breach of contract claim.

C.  *The Court Awards $130,185.66 in Damages Plus Post-Judgment Interest.*

Finding sufficient basis for default judgment, the Court must consider any damages to which FFS is entitled. Normally, courts should not award damages without a hearing, unless detailed affidavits establish the necessary facts. *Morelia Mexican*, 126 F. Supp. 3d at 813 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). But a hearing is unnecessary if the court can determine the amount of damages with mathematical calculation by referencing the pleadings and supporting documents. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Because FFS's requested contractual damages can be determined with certainty, the Court finds that no hearing is required and awards $130,185.66 in contractual damages. The Court also awards post-judgment interest.

1.  Contractual Damages

A court awarding damages for breach of contract seeks "to restore an injured party to the same position that he would have been in had the other party not breached the contract." *Lindon v. Dalton Hotel Corp.*, 49 So. 3d 299, 305 (Fla. Dist. Ct. App. 2010) (citations omitted). "[T]he injured party may only recover those damages that naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time that the contract was made." *Id.* at 306 (citation omitted).

FFS seeks two forms of contractual damages: (1) $130,185.66 in Defendants' outstanding principal balance on the Contract and (2) $1,357.40 in "late charges on the Contract." Doc. 16-3, Decl. Granger ¶¶ 9-10. As to the former, outstanding principal balance "naturally flow[s] from the

breach" and would have been contemplated by the parties as a result of breach. *See Lindon*, 49 So. 3d at 305. Accordingly, the Court awards FFS $130,185.66 in outstanding principal balance.

As to the latter, FFS fails to identify any contractual basis for the "late charges" claimed.[2] Without more, FFS has not shown how its $1,357.40 figure "naturally flow[s] from the breach." *See Lindon*, 49 So. 3d at 305. And while the amount requested by Plaintiffs "may be capable of mathematical calculation, . . . [FFS's] math has not been presented to the Court." *Travelers Cas. & Sur. Co. of Am. v. Hub Mech. Contractors, Inc.*, No. 2:13CV101-KS-MTP, 2014 WL 1464553, at *4 (S.D. Miss. Apr. 15, 2014). Thus, even if the Court were to find a contractual basis for late charges, it would be unable to award damages at this time.

Based on the above, the Court awards **$130,185.66** in contractual damages. If FFS continues to seek the purported late charges, it may, within **14 days** of this Order, file supplemental briefing to identify both the contractual basis and the particular mathematical calculation for $1,357.40 in late charges.

2. Post-Judgment Interest

FFS also requests post-judgment interest. Doc. 16, Mot., 2. The Court need not enter a specific order granting FFS's request for post-judgment interest, as it is mandated by statute and awarded as a matter of course. *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) ("Post-judgment interest is awarded as a matter of course."); *see* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). The post-judgment interest will be fixed in accordance with § 1961(a) on the date the Court enters judgment.

---

[2] While the Contract provides for certain "late charges" on delinquent monthly payments, *see* Contract, 1, and FFS alleged certain per diem interest threatened against Defendants in September 2024, *see* Doc. 1, Compl. ¶¶ 15, 19, it is not obvious that the late charges sought here stem from either of those sources. Nor does FFS connect the claimed charges to any particular source.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** FFS's Motion for Default Judgment (Doc. 16). The Court **GRANTS** FFS's request for contractual damages in the amount of $130,185.66.

A final judgment will follow, but not before 15 days[3] of the entry of this Order.

**SO ORDERED.**

**SIGNED: February 6, 2026.**

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] FFS did not request attorney's fees or costs in its Motion but has indicated that it would do so within 14 days of this Order. Doc. 16, Mot., 2 n.1. If FFS does request attorney's fees and costs, the Court will, by separate order, determine whether and to what extent attorney's fees and costs should be awarded before entering a final judgment.